CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 13 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MARY K. SPROUSE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:10CV00113 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues presently before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Mary K. Sprouse, was born on March 25, 1968, and eventually completed her high school education. Mrs. Sprouse has been employed as a store manager/clerk, teacher's aide, and part-time tutor. She was still working as a tutor on a part-time basis at the time of the administrative hearing on June 9, 2009.[1] On February 5, 2007, Mrs. Spouse filed an application for disability insurance benefits. She alleged that she became disabled for all forms of substantial gainful employment on January 1, 2004, due to a bipolar disorder. Mrs. Sprouse now

---

[1] During the administrative hearing, Mrs. Sprouse testified that she began working as a tutor in 2004 or 2005. She described it as a "flexible job," in which she worked "two hours, four days a week" at the same elementary school where she had previously worked as a teacher's aide. (Tr. 32).

maintains that she has remained disabled to the present time as a result of this non-exertional impairment. The record reveals that Mrs. Sprouse met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Mrs. Sprouse's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated September 2, 2009, the Law Judge also determined that Mrs. Sprouse is not disabled. Based on the earnings records from her job as a part-time tutor, the Administrative Law Judge first ruled that Mrs. Sprouse engaged in substantial gainful activity from 2005 through 2007 and, thus, that the disability inquiry ended at the first step of the sequential evaluation process with respect to that three-year period.[2] However, the Law Judge found that Mrs. Sprouse did not engage in substantial gainful activity "in 2004 or the years commencing in 2008." (Tr. 11). Thus, the Law Judge focused the remainder of his decision on "the issue of the claimant's disability in 2004 and in 2008 and afterward." (Tr. 12). The Law Judge found that the plaintiff suffers from a severe psychological impairment, specifically "a bipolar affective disorder with medicine or depression induced anhedonia or fatigue." (Tr. 12). Despite this impairment, the Law Judge ruled that plaintiff retains the residual functional capacity to perform medium work, "except that she must avoid hazardous machines and unprotected heights," and

---

[2] The Commissioner's regulations require the application of a five-step sequential evaluation process to evaluate disability claims. 20 C.F.R. § 404.1520. During the evaluation process, the Administrative Law Judge considers, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. Id. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

2

"she is limited to simple, repetitive tasks, and she needs to avoid co-worker interactions." (Tr. 13). Based on such a residual functional capacity, the Law Judge ruled that plaintiff is disabled for her past work roles as a store manager/clerk and teacher's aide. However, given her residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Mrs. Sprouse retains sufficient functional capacity to perform other work roles that exist in significant number in the national economy, including the role of simple food preparation worker. Accordingly, the Law Judge ultimately concluded that Mrs. Sprouse is not disabled, and that she is not entitled to disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Sprouse has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. First, the court finds that

3

there are unresolved questions as to whether Mrs. Sprouse engaged in substantial gainful activity from 2005 to 2007, and that the Administrative Law Judge failed to fully develop the record on this issue. In addition, and perhaps more importantly, the court concludes that the Law Judge failed to adequately consider all of the medical evidence submitted in connection with the plaintiff's claim for benefits. In assessing Mrs. Sprouse's residual functional capacity, the Law Judge partially rejected assessments from a nonexamining state agency psychologist and a psychologist who performed a consultative examination on behalf of the state agency. After these psychologists made their assessments, Mrs. Sprouse's records were reviewed by a second, nonexamining state agency psychologist, and the plaintiff was evaluated by a clinical psychologist at the request of her family nurse practitioner. In summarizing the evidence, the Law Judge did not reference either of these more recent reports. In such circumstances, the court must conclude that there is "good cause" for remand of this case to the Commissioner for additional consideration of the plaintiff's claim for disability benefits.

Turning first to the Law Judge's assessment of the plaintiff's part-time employment as an elementary school tutor, the Law Judge found that her work constituted substantial gainful activity in 2005, 2006, and 2007, based on her earnings during that three-year period. Because Mrs. Sprouse was paid for her work as a tutor, it clearly constituted "gainful" activity. See 20 C.F.R. § 404.1572(b) ("Gainful work activity is work activity that you do for pay or profit."). The plaintiff argues, however, that it should not be considered "substantial work activity," since she only worked two hours per day, four days per week, and since she received special accommodations. See 20 C.F.R. § 404.1572(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities.").

4

Under the regulations, earnings derived from work activity are generally the primary consideration in determining whether a claimant engaged in substantial gainful activity. See 20 C.F.R. § 404.1574(a)(1). If a claimant's earnings exceed guidelines set forth in the regulations, a presumption arises that the claimant engaged in substantial gainful activity.[3] See 20 C.F.R. § 404.1574(b)(2); Payne v. Sullivan, 946 F.2d 1081, 1083 (4th Cir. 1991). Work may be substantial "even if it is done on a part-time basis." 20 C.F.R. § 1572(a). However, the presumption of substantial gainful activity "may be rebutted" and "is not to be rigidly applied." Payne, 946 F.2d at 1083.

In this case, it appears from the record that the Law Judge based his substantial gainful activity determination solely on the plaintiff's average monthly earnings:

> Using the years 2007 as an example, the claimant's earnings in 2007 were $7322.50. Dividing that amount over 7 months, this comes to average earnings per month of about $1,046.07. The amount that gave rise to a presumption that the earnings activity was substantial gainful activity in 2007 was $900.00. Thus the claimant was performing substantial gainful activity in 2007, even though she worked limited hours. The same analysis shows that the claimant performed substantial gainful activity in 2005 and 2006.

---

[3] For calendar years beginning January 1, 2001, the regulations provide that if an individual's earnings from work averaged more than "[a]n amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998," the earnings would "ordinarily show that you have engaged in substantial gainful activity." 20 C.F.R. § 404.1574(b)(2). The Social Security Administration lists the yearly national wage index at: http://www.ssa.gov/OACT/COLA/AWI.html, and the monthly substantial gainful activity amounts at: http://www.ssa.gov/OACT/COLA/ sga.html.

For the time period at issue in this case, the amounts necessary to create a presumption of substantial gainful activity were $830.00 per month in 2005; $860.00 per month in 2006; and $900.00 per month in 2007.

5

(Tr. 11-12) (emphasis added).[4] The highlighted statement from the Law Judge's decision suggests that he concluded that the plaintiff's earnings beyond the monthly minimum compelled the conclusion that she performed substantial gainful activity. In other words, it appears that the Law Judge improperly viewed Mrs. Sprouse's earnings as conclusive on the issue of substantial gainful activity, rather than merely presumptive and subject to rebuttal.

As the United States Court of Appeals for the Fourth Circuit explained in Payne v. Sullivan, the Commissioner is required to consider other factors set forth in 20 C.F.R. § 404.1573, including "the nature of the work, how well the claimant performs, whether the claimant is self-employed, and the time spent in work." Payne, 946 F.2d at 1083. However, none of these factors were considered in this case. Although the Law Judge recognized that Sprouse worked only a few hours per week, there is no indication that he specifically considered whether her limited work schedule rebutted the presumption of substantial gainful activity. See, e.g., Garnett v. Sullivan, 905 F.2d 778, 779-780 (4th Cir. 1990) (evaluating whether the amount of time the claimant worked as a school bus driver was sufficient to rebut the presumption of substantial gainful activity and ultimately concluding that it was not).

There is also no indication that the Law Judge considered whether plaintiff's work was done under special conditions that would rebut the presumption of substantial gainful activity. See 20 C.F.R. § 404.1573(c) ("If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity."). During the

---

[4] The court also notes that the Law Judge appears to have erred in dividing plaintiff's salary by seven to determine her average monthly salary. The plaintiff indicated at the administrative hearing that she worked eight months per year, "from October through May." (Tr. 41).

administrative hearing, Mrs. Sprouse testified that she missed at least two days per month because of her non-exertional impairment. Additionally, in response to questions from the Administrative Law Judge, Mrs. Sprouse indicated that her supervisor was aware of her condition and that the supervisor was willing to accommodate her absences. While the regulations specifically define "special conditions" to include, among others, situations in which a claimant is "allowed to work irregular hours," or situations in which a claimant is "given the opportunity to work despite your impairment because of . . . past association with [her] employer," 20 C.F.R. § 404.1573(c), the Law Judge failed to evaluate whether the conditions of the plaintiff's part-time position constituted the type of "special conditions" that would rebut the presumption of substantial gainful activity.

Based on the foregoing, the court is unable to conclude that the Law Judge's decision in this regard is supported by substantial evidence. For this reason, and for those stated below, the case will be remanded for further administrative consideration. On remand, the Law Judge must consider the factors set forth in 20 C.F.R. § 404.1573, in conjunction with the earnings guidelines, in determining whether the plaintiff engaged in substantial gainful activity. Additionally, the Law Judge's findings with respect to this issue should "indicate explicitly that all relevant evidence has been weighed and its weight." Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979).

For the reasons that follow, the court is also unable to conclude that the Law Judge considered all of the relevant medical evidence submitted in connection with the plaintiff's claim for benefits. The record in the instant case includes reports from four psychologists: Dr. Bryce Phillips, Dr. Joseph Cianciolo, Dr. Yvonne Evans, and Dr. David Reid. Dr. Phillips, a state

7

disability agency psychologist, completed a mental residual functional capacity assessment on May 1, 2007. Dr. Phillips summarized all of the mental health records developed in treatment of Mrs. Sprouse through the date of his assessment. Based on his review, Dr. Phillips opined that plaintiff is moderately limited in her ability to understand and remember detailed instructions; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with coworkers or peers without distracting them; her ability to respond appropriately to changes in the work setting; and her ability to set realistic goals or make plans independently of others. However, Dr. Phillips concluded that the plaintiff can understand and follow simple job instructions, and that she "retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks." (Tr. 269).

In December of 2007, the plaintiff was evaluated by Dr. Cianciolo at the behest of the state disability agency. Dr. Cianciolo noted that Mrs. Sprouse "has a documented history of both inpatient and outpatient psychiatric intervention for the treatment [of] a bipolar disorder," and that "[d]espite taking her medication as prescribed, she continues with depressive mood and breakthrough panic symptoms." (Tr. 333). He assessed plaintiff as possessing a global assessment of functioning (GAF) level of 55.[5] Based on the results of his evaluation, Dr. Cianciolo determined that Mrs. Sprouse is capable of performing simple and repetitive tasks, and that she is capable of accepting instructions from supervisors. However, Dr. Cianciolo opined

---

[5] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

that plaintiff is "significantly impaired" in "her ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and complete[] a normal workday or workweek without interruption from [her] psychiatric condition." (Tr. 333). Dr. Cianciolo further opined that Mrs. Sprouse is "markedly impaired" in her ability to interact with coworkers and the public, and in her ability to cope with routine stressors. (Tr. 333). Given the duration and intensity of the plaintiff's symptoms, Dr. Cianciolo noted that the "[p]rognosis for significant change would appear to be poor." (Tr. 333).

It is clear from the record that the Administrate Law Judge considered the reports from Dr. Phillips and Dr. Cianciolo in assessing the plaintiff's residual functional capacity. While the Law Judge agreed that the plaintiff is only capable of performing simple, repetitive tasks and that she needs to avoid co-worker interactions, the Law Judge specifically rejected the other areas of limitation noted by Dr. Phillips and Dr. Cianciolo, finding that they were inconsistent with the plaintiff's ability to maintain part-time work as a tutor. Noticeably absent from the Law Judge's decision, however, is any reference to the more recent reports from Dr. Evans and Dr. Reid.

On December 14, 2007, Dr. Evans completed a mental residual functional capacity assessment at the request of the state disability agency. Dr. Evans noted that "[t]he medical evidence establishes a medically determinable impairment of Bipolar I D/O, Most Recent Episode depressed, Moderate." (Tr. 355). Although Dr. Evans determined that plaintiff is capable of performing "simple, non-stressful work with limited social interaction," she was also of the opinion that the plaintiff is moderately limited in a number of areas, including her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule; her ability to maintain regular attendance; and her ability to complete a normal

workday and workweek without interruptions from psychologically based symptoms. (Tr. 353-354).

Dr. Reid performed a diagnostic evaluation on March 6, 2008 at the request of Mrs. Sprouse's family nurse practitioner. His examination notes indicate that plaintiff "was recently hospitalized on the Crossroads unit for four days to adjust her medication." (Tr. 411). At the time of the evaluation, Mrs. Sprouse's reported symptoms included irritability, rage, severe depression, and exhaustion. In his assessment of Mrs. Sprouse's emotional functioning, Dr. Reid noted as follows:

> The overall configuration of clinical scales is reflective of an individual who presents with marked distress, unhappiness, moodiness, and tension. Though she is quite distressed and aware of her need for help, her low energy levels, passivity and withdrawal may make it very challenging to engage her in treatment. She is having difficulties focusing and concentrating as well as difficulties making even simple decisions in her life. These findings could certainly account for [her] selective memory deficits. Mrs. Sprouse is also experiencing very uncomfortable levels of anxiety perhaps related to some past traumatic event that has yet to be resolved to her satisfaction. Her moods are likely to be labile with instability of mood states ranging from depressed and sullen to irritable and angry. She likely has little sense of direction or purpose in life at this time and she seems to be concerned with fears of being abandoned or rejected by others.

(Tr. 411-412). Dr. Phillips diagnosed Mrs. Sprouse with a Mood Disorder, NOS on Axis I and assessed a GAF of 50, which indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning . . . ." Diagnostic and Statistical Manual of Mental Disorders at 34.

On appeal to this court, the Commissioner argues that Dr. Reid's opinion is not supportive of the plaintiff's claim for disability benefits, since "Dr. Reid diagnosed 'mood

disorder' only," and since he questioned whether plaintiff's responses to certain tests may have been exaggerated in an effort to receive attention and support from others. (Commissioner's Br. at 12). The Commissioner also argues that Dr. Evans' report supports the Law Judge's assessment of the plaintiff's residual functional capacity, even though Dr. Evans documented several work-related areas in which Mrs. Sprouse is moderately limited. While these arguments may or may not have merit, the simple fact is that there is no indication that the Law Judge took into account the assessments set forth in the more recent reports from Dr. Evans and Dr. Reid. As noted above, the Law Judge made no mention of Dr. Evans, Dr. Reid, or the substance of their reports in his summary of the evidence, or in any other section of his decision. Thus, there is no reason to believe that the Law Judge considered the impressions and opinions of these psychologists in assessing the plaintiff's residual functional capacity.

It is well settled that in resolving conflicts in the evidence, the Commissioner must specifically indicate the weight to be given to all of the relevant evidence, as well as the reasons thought to be in support of the ultimate conclusion regarding relative merit. See Stawls v. Califano, supra; see also Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); Gordon v. Schweiker, 725 F.2d 231, 235-236 (4th Cir. 1984); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983). Put differently, while it might be possible to state reasons as to why the Administrative Law Judge could have rejected the opinions of Dr. Evans and Dr. Reid, the court must conclude that no such reasons were cited in the opinion of the Law Judge. The case must be remanded for more specific fact finding.

In summary, the court is unable to determine that the Commissioner thoroughly considered all of the evidence submitted in connection with plaintiff's claim for benefits. The

court finds "good cause" for remand of the case to the Commissioner for further development and consideration. If the Commissioner is unable to resolve the issues in this matter in plaintiff's favor based on the existing record, the Commissioner shall conduct a new administrative hearing. Upon remand, both sides will be allowed to submit additional evidence and argument.

The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This 13th day of June, 2011.

_____
Chief United States District Judge